UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOSEPH SIEFERT, *et al.*, | : | Case No. 1:17-cv-511 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| HAMILTON COUNTY BOARD OF COMMISSIONERS, *et al.*, | : | |
| Defendants. | | |

**ORDER LIFTING THE STAY AND
GRANTING COUNTY DEFENDANTS'
MOTION TO DISMISS**

This civil action is before the Court upon the County Defendants'[1] motion to dismiss Plaintiffs' complaint (Doc. 12) and the parties' responsive memoranda (Docs. 19 and 22).

On August 2, 2018, the Court issued an Order granting the Children's Defendants'[2] motion to dismiss and granting the County Defendants' motion to stay proceedings. (Doc. 32). Plaintiffs and County Defendants have informed the Court that

---

[1] The "County Defendants" are Hamilton County, Hamilton County Board of Commissioners, Hamilton County Job and Family Services ("HCJFS"), Moira Weir, Eric Young, and Rachel Butler.

The Court notes that, under Ohio law, HCJFS and Hamilton County are not *sui juris* and therefore cannot be sued. *Estate of Glenara Bates v. Hamilton Cty. Dep't of Job & Family Servs.*, No. 1:15-cv-798, 2017 WL 106871, at *1 n.1 (S.D. Ohio Jan. 11, 2017).

[2] The "Children's Defendants," who have been terminated as defendants, are Cincinnati Children's Hospital Medical Center ("Children's"), Jennifer Bowden, M.D., Kimberly Stephens, LISW, Ankita Zutshi, M.D., Daniel Almeida, M.D., Suzanne Sampang, M.D., and Lauren Heeney.

1

the state proceedings requiring abstention under *Younger* are completed. (*See* Docs. 33 and 34). Accordingly, the Court hereby lifts the stay and will now examine County Defendants' pending motion to dismiss.

## I. FACTS <u>AS ALLEGED</u> BY THE PLAINTIFF

For purposes of this motion to dismiss, the Court must: (1) view the complaint in the light most favorable to Plaintiffs; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

Plaintiffs Joseph and Melissa Siefert are residents of Ohio and the parents of Minor Siefert.[3] (*Id.* at ¶ 4). Plaintiffs allege that from November 23, 2016 to December 20, 2016, they were denied their fundamental liberty interest in the care, custody, control, companionship, and management of Minor Siefert, as guaranteed by the Fourteenth Amendment. (*Id.* at ¶¶ 96, 127).

In November 2015, the Plaintiffs learned that Minor Siefert was suffering from depression, anxiety, and suicidal ideations. (*Id.* at ¶ 24). The Plaintiffs had their long-time pediatrician treat Minor Siefert with medication and therapy. (*Id.* at ¶¶ 24, 29). On August 11, 2016, Minor Siefert informed Plaintiffs that Minor Siefert considered themselves to be a transgender child. (*Id.* at ¶ 25). Minor Siefert emailed HCJFS on November 11, 2016 and informed HCJFS that they were experiencing transgender thoughts and that Plaintiffs were unsupportive and abusive. (*Id.* at ¶ 26). On that same day, Defendant Butler of HCJFS visited Plaintiffs' home and asked Mrs. Siefert questions

---

[3] Due to privacy concerns regarding the child at issue, Plaintiffs' child will be referred to as "Minor Siefert."

2

regarding conditions in the home. (*Id.* at ¶ 28). On November 13, Plaintiffs took Minor Siefert to Children's Liberty Township location for psychological evaluation regarding suicidal ideations. (*Id.* at ¶ 30). Minor Siefert was ultimately transferred to Children's psychiatry facility at the College Hill location. Plaintiffs went to visit Minor Siefert at Children's College Hill facility on November 15, and received a welcome package that included information regarding Children's policies and guidelines. (*Id.* at ¶¶ 36–37). The Children's hospital policy provided to Plaintiffs includes a grievance process for handling disagreements with the hospital regarding issues of treatment and discharge. (Doc. 12, Ex. B – Children's Hospital Policy).[4] Plaintiffs allege that the welcome packet did not include a nineteen-page document titled "Psychiatry Impatient Admission, A Family Guide," which stated that Children's could tell parents that they were not to take their child home if Children's found it unsafe for the child. (*Id.* at ¶¶ 38–39). Plaintiffs allege that they were not told of this policy at the time Minor Siefert was admitted. (*Id.* at ¶ 40).

Over the next few weeks, Plaintiffs consulted with HCJFS regarding Minor Siefert's treatment. (*Id.* at ¶ 41). At Plaintiffs' first conference with Defendant Butler, she allegedly explained to Plaintiffs that Children's would not send Minor Siefert home

---

[4] In determining the sufficiency of the complaint, the Court's review is confined to "the pleadings, exhibits attached to or addressed in the complaint, documents included with a motion to dismiss if referenced in the complaint, and public records." *Vandenheede v. Vecchio,* 541 F. App'x 577, 579 (6th Cir. 2013) (citing *Rondigo, LLC. v. Twp. of Richmond,* 641 F.3d 673, 680–81 (6th Cir. 2011)). The Court may consider documents integral to or attached to the pleadings when ruling on a Rule 12 motion to dismiss without converting the motion to one for summary judgment. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir. 2007). The Court will consider the Children's Hospital Policy because it is referenced by Plaintiffs in the complaint and is integral to this motion to dismiss.

without permission from HCJFS, and if Plaintiffs could not take care of Minor Siefert, HCJFS "would step in and do it." (*Id.* at ¶ 42). Plaintiffs claim they did not "agree to allow [Children's] and HCJFS to keep Minor Siefert at Children's without their consent." (*Id.* at ¶ 47).

On November 22, a Children's doctor met with a doctor from Humana Behavioral Health ("Humana"), the insurance provider for Minor Siefert's treatment, to discuss Minor Siefert's case. (*Id.* at ¶¶ 46, 51). Based on the meeting with the doctor, Humana determined that Minor Siefert "had no acute symptoms that require 24 hour care (sic) . . . [Minor Siefert] is not a danger to [Minor Siefert] or others. [Minor Siefert] is not aggressive. [Minor Siefert] is medically stable. [Minor Siefert] is not manic." Based on this finding, Humana denied coverage for further treatment of Minor Siefert by Children's. (*Id.* at ¶ 52).

On that same day, Plaintiffs met with Children's regarding Minor Siefert's discharge. Plaintiffs allege that Butler and Minor Siefert were supposed to attend the meeting, however Children's told Plaintiffs that Butler would not be available until November 28. (*Id.* at ¶¶ 53–54). Plaintiffs complain that Butler was available and was in regular telephone contact with Children's and met with Minor Siefert on November 23. (*Id.* at ¶¶ 55–57).

Plaintiffs contend that starting November 23, Mr. Siefert began leaving voicemail messages with Children's and left calls with HCJFS attempting to have Minor Siefert discharged from Children's to the Plaintiffs. (*Id.* at ¶¶ 60, 61). Eventually, Kimberly Stephens of Children's spoke with Mr. Siefert by telephone and informed him that Minor

4

Siefert could not be discharged because Minor Siefert was not "medically cleared" and that Mr. Siefert would have to contact HCJFS to obtain Minor Siefert's discharge. (*Id.* ¶¶ 64–65). Plaintiffs allege that on that same day, a Children's doctor wrote in his notes that HCJFS "gave clear recommendations to not allow patient to be discharged to parents." (*Id.* at ¶ 67). While HCJFS allegedly told Plaintiffs that it was "actively pursuing" the case throughout the relevant time period, HCJFS never attempted to obtain a court order of custody. (*Id.* at ¶ 59).

On November 28, Plaintiffs, HCJFS, and Children's held another meeting to discuss Minor Siefert's discharge. (*Id.* at ¶¶ 69–77). During this meeting, Mr. Siefert asked what the Plaintiffs had to do to have Minor Siefert discharged, and Butler responded, "[i]t does not work that way," and that when Plaintiffs cannot take care of their child, HCJFS has to "step in." (*Id.* at ¶¶ 71–72). In response, Mr. Siefert allegedly demanded that Minor Siefert be discharged and argued that he could go down the hall and take Minor Siefert home, but Children's informed the Plaintiffs that that was not allowed. (*Id.* at ¶ 74).

Plaintiffs had another meeting with Butler and Young of HCJFS on November 30. (*Id.* at ¶¶ 87–91). Young allegedly explained HCJFS's policy preventing parents from having custody or association with their children when Children's or HCJFS does not approve of releasing the child to the parents, even without the parents' consent or a court order, and that HCJFS has to "go by what the doctors say." (*Id.* at ¶ 90). Ultimately, Minor Siefert did not leave Children's until December 20, 2016 when HCFJS and

5

Plaintiffs entered into a voluntary "Safety Plan" releasing Minor Siefert to the child's maternal grandparents. (*Id.* at ¶ 96).

Plaintiffs claim that the County Defendants violated their procedural and substantive due process rights and violated federal and state civil conspiracy laws. Plaintiffs seek compensatory and punitive damages, as well as injunctive relief.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

6

face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

## III. ANALYSIS

Plaintiffs assert five causes of action, claiming that the County Defendants: (1) violated 42 U.S.C. § 1983 by depriving Plaintiffs of their Fourteenth Amendment procedural due process rights (Count I); (2) violated 42 U.S.C. § 1983 by depriving Plaintiffs of their Fourteenth Amendment procedural substantive due process rights (Count II); (3) committed federal civil conspiracy (Count III); (4) committed Ohio civil conspiracy (Count IV); and (5) violated Plaintiffs' Fourteenth Amendment Due Process Clause and should be enjoined from any further such conduct (Count V). The County Defendants have moved to dismiss all claims.

### 1. § 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Gray v. City of Detroit,* 399 F.3d 612, 615 (6th Cir. 2005). Here, there is no dispute that the County

7

Defendants were acting under color of state law, only whether Plaintiffs' were deprived of their rights to procedural and substantive due process.

### a. Qualified Immunity

County Defendants argue that Defendants Moria Weir, Eric Young, and Rachel Butler are entitled to qualified immunity in their individual capacities.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a 'mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.*

Plaintiffs bear the burden of showing both that (1) County Defendants violated Plaintiffs constitutional right and (2) the right was clearly established at the time of the violation. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). District courts may exercise discretion in deciding which of the two prongs should be addressed first in a qualified immunity analysis. *See Pearson*, 555 U.S. at 236.

In order to defeat qualified immunity, "a plaintiff must identify a case with a similar fact pattern that would have given "fair and clear warning to officers" about what

the law requires." *White v. Pauly*, ––– U.S. ––––, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (quotation omitted). Ultimately, Plaintiffs fail to plead that County Defendants violated their clearly established procedural or substantive due process rights.

### b. Procedural Due Process

To establish a violation of their procedural due process rights, Plaintiffs must show "(1) that [they] was deprived of a protected liberty or property interest, and (2) that such deprivation occurred without the requisite due process of law." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.,* 470 F.3d 286, 296 (6th Cir. 2006) (citing *Thomas v. Cohen,* 304 F.3d 563, 576 (6th Cir. 2002)). "[D]ue process requires that when a State seeks to terminate [a protected] interest ..., it must afford 'notice and opportunity for hearing appropriate to the nature of the case' before the termination becomes effective." *Bell v. Burson,* 402 U.S. 535, 542 (1971) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)).

Plaintiffs claim the County Defendants violated their right to familial association in violation of procedural due process. "There is no doubt that under the constitution, the parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of law." *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). The Supreme Court has found that a parent has a constitutional right to maintenance of a parent-child relationship as a parent's "desire for and right to the companionship, care, custody and management of his or her children is an interest far more precious than any property right." *Lassiter v. Department of Social Services,* 452 U.S. 18, 27 (1981). However, a parent's right to maintenance of a parent-child relationship is limited by "an

9

equaling compelling governmental interest in the protection of children, particularly where the children need to be protected from their own parents." *Kottmyer*, 436 F.3d at 690. Therefore, "although parents enjoy a constitutionally protected interest in their family integrity, this interest is counterbalanced by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is necessary as against the parents themselves." *Id*. (quoting *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 104 (2d Cir. 1999)).

Here, the County Defendants argue that dismissal of Plaintiffs claim is appropriate because (1) the government's interest in Minor Siefert's safety outweighed the Plaintiff's liberty interest and (2) the Plaintiffs' provided implied consent to the continued hospitalization of Minor Siefert.

"A parent is necessarily deprived of his or her right to custody and control of their child, either permanently or temporarily, when a child is removed from the home." *Kottmyer*, 436 F.3d at 691. "Notice and an opportunity to be heard are necessary before parental rights can be terminated." *Anh v. Levi*, 586 F.2d 625, 632 (6th Cir. 1978). "Mere investigation by authorities into child abuse allegations without more, however, does not infringe upon a parent's right to custody or control of a child." Kottmyer, 436 F.3d at 691.

The Court considers three factors in determining whether County Defendants have violated Plaintiffs' procedural due process rights: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute

procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

Under the first *Mathews* factor, the Court must consider the private interests of Plaintiffs affected by the hospitalization of Minor Siefert. Although Plaintiffs have a strong interest in maintaining familial association with Minor Siefert, Plaintiffs did not lose custody over Minor Siefert during the relevant time period, Plaintiffs voluntarily took Minor Siefert to Children's at their pediatricians' urging, and Children's allowed Plaintiffs to visit Minor Siefert if the child consented.

Regarding the third *Mathews* factor, the government clearly has a strong interest in protecting children who are at risk. Here, it is undisputed that Minor Siefert reported to HCJFS that Minor Siefert was being abused by the Plaintiffs; that Minor Siefert suffered from depression, anxiety, and suicidal ideation; and that Children's doctors had found that Minor Siefert was not "medically cleared" to be discharged. (Doc. 1 at ¶¶ 24, 26, 65). Therefore, County Defendants had a strong interest in protecting Minor Siefert.

Under the second *Mathews* factor, the Court must consider the risk of erroneous deprivation through the procedures used. "[T]he state must provide clear and effective procedures in ensuring that a parent's interest in their children is not unduly obstructed." *Smith v. Williams-Ash*, 2006 WL 3716782, *5 (S.D. Ohio Dec. 14, 2006).

There is no dispute that Minor Siefert was voluntarily admitted to Children's on November 13, 2016. (Doc. 1 at ¶¶ 30–32). Plaintiffs do not allege that County Defendants had legal custody or attempted to obtain legal custody of Minor Siefert

11

during the time in question. However, Plaintiffs contend that they were prevented from having Minor Siefert discharged from Children's starting on November 23, 2016 until December 20, 2016 when the Plaintiffs and HCJFS entered into a voluntary safety plan giving Minor Siefert's grandparents custody of the child. (*Id.* at ¶ 96). Plaintiffs were allegedly told that Minor Siefert could not be discharged because she was not medically cleared and HCJFS recommended against discharge to the parents.

County Defendants note that, although Plaintiffs allege they communicated with HCJFS and Children's throughout the relevant time period that they wanted Minor Siefert discharged, they do not allege that they actually tried to remove Minor Siefert, that they made written demands for her release, or that they filed a grievance under the hospital policies that they received upon Minor Siefert's admission to Children's, (*Id.* at ¶ 37; Doc. 12, Ex. B – Children's Hospital Policy), or made a written request for Release of Voluntary Patients pursuant to O.R.C. § 5122.03. (Doc. 12 at 8–9). County Defendants contend that if any of these steps had been taken by the Plaintiffs, HCJFS would have requested an emergency order from Hamilton County Juvenile Court, but, pursuant to Ohio Juv. R. 6, HCJFS was not allowed to seek an emergency order while Minor Siefert was hospitalized at Children's. Thus, County Defendants argue that Plaintiffs inaction amounts to implied consent to Minor Siefert continuing to reside at Children's, especially because Plaintiffs placed Minor Siefert at Children's out of concern for her safety.

The Sixth Circuit's decision in *Smith v. Williams-Ash*, 520 F.3d 596 (6th Cir. 2008) is instructive here. In that case, the defendant, an HCJFS employee, removed the Smiths' children from their home without affording the Smiths a hearing. The defendant

argued that the Smiths consented, through a safety plan, to removal of their children. The Sixth Circuit cited favorably to Judge Posner's reasoning in *Dupuy v. Samuels*, 465 F.3d 757 (7th Cir. 2006) in finding that "hearings are required for deprivations taken over objection, not for steps authorized by consent." *Id.* at 761–62.

Although *Smith v. Williams-Ash* differs in important ways from this action – in particular, in that case, the parents and HCJFS actually entered into a voluntary safety plan, which did not occur here until approximately four weeks after Plaintiffs sought Minor Siefert's discharge from Children's – it is the precedent with the most similar fact pattern to this matter. In both cases, the parents' initial action to relinquish control of their children was voluntary, both set of parents were provided with information necessary to challenge the policies that deprived them of their parental rights, both set of parents retained custody of their children throughout the relevant time period, and a hearing did not occur in either case.[5] The Sixth Circuit ultimately found that, because the Smiths voluntarily consented to enter into the safety plan and did not utilize the safety plan's clear mechanisms for rescinding the plan, the defendant provided the Smiths with the process they were due. In that case, the court did not even reach the issue of qualified immunity because the appellate court found that the defendant had not violated the Smiths' procedural due process rights.

---

[5] Regarding the fact that a hearing never took place here, the Court finds persuasive the County Defendants' argument that, pursuant to Ohio Juv. R. 6, HCJFS was not permitted to seek an emergency custody order while Minor Siefert was safe at Children's. Plaintiffs have not challenged the constitutionality of Ohio. Juv. R. 6.

Here, Plaintiffs are unable to meet their burden of demonstrating that the County Defendants violated a clearly established constitutional right. The Plaintiffs fail to cite any case law supporting their theory that a social worker violates a parents' procedural due process rights (1) by not seeking a court custody order to prevent parents from removing a child from the hospital or (2) by investigating child abuse allegations while a child is hospitalized. Considering the Sixth Circuit's finding in *Smith v. Williams-Ash*, this Court cannot conclude that County Defendants have violated a clearly established procedural due process right. The County Defendants therefore are entitled to qualified immunity on this claim.

### c. Substantive Due Process

"Substantive due process ... serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Howard v. Grinage,* 82 F.3d 1343, 1349 (6th Cir. 1996) (internal quotation marks omitted). Substantive due process claims come in two varieties: "(1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'" *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.,* 640 F.3d 716, 728 (6th Cir. 2011) (internal quotation marks omitted).

Plaintiffs premise their substantive due process claim on the deprivation of their right to familial association, as discussed *supra*, so their claim is of the first type. *See Pittman*, 640 F.3d 716, 728 n.6 ("where the plaintiff, as here, alleges a violation of a recognized liberty interest, in this case family integrity, the Court applies a different

14

substantive due process test, which requires a compelling government interest and narrowly tailored conduct.")

The Sixth Circuit has instructed courts to be cognizant of the difficult choices that social workers face in determining whether to interfere with the custody rights of parents. "If they err in interrupting parental custody, they may be accused of infringing the parents' constitutional rights. If they err in not removing the child, they risk injury to the child and may be accused of infringing the child's rights." *Farley v. Farley*, 225 F.3d 658 (6th Cir. 2000) (quoting *Van Emrik v. Chemung County Dep't of Soc. Servs.*, 911 F.2d 863, 866 (2d Cir. 1990). The Eighth Circuit provides a helpful explanation for considering qualified immunity for social workers accused of substantive due process violations: "The need to continually subject the assertion of this abstract substantive due process right to a balancing test which weighs the interest of the parent against the interests of the child and the state makes the qualified immunity defense difficult to overcome." *Thomason v. SCAN Volunteer Servs., Inc.*, 85 F.3d 1365, 1371 (8th Cir. 1996).

Moreover, other circuits have noted that the contours of the substantive due process right to familial association is not clearly defined. *See, e.g., Kiser v. Garrett,* 67 F.3d 1166, 1173 (5th Cir.1995) ("[A]lthough a substantive due process right to family integrity has been recognized, the contours of that right are not well-defined, and continue to be nebulous, especially in the context of the state's taking temporary custody of a child during an investigation of possible parental abuse."); *Frazier v. Bailey,* 957 F.2d 920, 931 (1st Cir.1992) ("We agree with other courts that while there may be a due

process right of 'familial integrity' of some dimensions, the dimensions of this right have yet to be clearly established.").

Here, it is clear that the County Defendants had a compelling interest in the safety of Minor Siefert. As discussed earlier, County Defendants were presented with allegations that Plaintiffs had abused Minor Siefert, that Minor Siefert was potentially suicidal, and that doctors at Children's had not medically cleared Minor Siefert for discharge. Minor Siefert's continued stay at Children's, with the Plaintiffs being allowed to visit Minor Siefert at the direction of doctors, was a narrowly tailored means of ensuring the safety of the child. *See Thomason*, 85 F.3d at 1373 (finding no substantive due process violation and explaining that "[w]here a treating physician has clearly expressed his or her reasonable suspicion that life-threatening abuse is occurring in the home, the interest of the child (as shared by the state as *parens patriæ*) in being removed from that home setting to a safe and neutral environment outweighs the parents' private interest in familial integrity as a matter of law.").

As discussed *supra*, the fact pattern here is similar to that in *Smith v. Williams-Ash*. In that case, the Sixth Circuit found that the HCJFS defendant was entitled to qualified immunity because plaintiffs failed to allege a violation of their substantive due process claims. *Smith v. Williams-Ash*, 173 Fed. Appx. 363, 367 (6th Cir. 2005). Here, Plaintiffs fail to point to any case where social workers were found to have violated parents' substantive due process rights for telling parents that a child should remain hospitalized at a doctor's recommendation. Plaintiffs cannot meet their burden of establishing a clearly established substantive due process right that the County

16

Defendants have violated. Accordingly, keeping in mind the difficult choices that social workers face, and the government's strong interest in the safety of Minor Siefert, the Court finds that the County Defendants are entitled to qualified immunity on Plaintiffs' substantive due process claim.

Because Plaintiffs fail to adequately allege a constitutional violation by any of the HCJFS employees, Plaintiffs claims against all of the County Defendants, including the Hamilton County Board of Commissioners, are dismissed. *Grabow v. Cty. of Macomb*, 580 F. App'x 300, 312 (6th Cir. 2014) ("Absent an underlying constitutional violation, [plaintiff's] claim against the county under § 1983 must also fail."); *Wilson v. Morgan,* 477 F.3d 326, 340 (6th Cir. 2007) ("There can be no *Monell* municipal liability under § 1983 unless there is an underlying unconstitutional act.").

### 2. Federal and State Conspiracy Claims

Plaintiffs state that their federal conspiracy claim is based on their constitutional interest in family integrity on violations of procedural and substantive due process pursuant to § 1983. (Doc. 19 at 27). As already discussed, Plaintiffs' procedural and substantive due process claims fail. Accordingly, their federal conspiracy claim also fails.

Additionally, Plaintiffs cannot prevail on their civil-conspiracy claim under Ohio law, which requires that they allege (1) a malicious combination, (2) of two or more persons, (3) that caused injury to a person or property, and (4) the existence of an underlying wrongful act that is independent of the conspiracy. *Woodward Const., Inc. v. For 1031 Summit Woods, L.L.C.*, 2015-Ohio-975, ¶ 21, 30 N.E.3d 237, 242 (Ohio 1st.

Dist. 2015). Here, the alleged underlying wrongful acts are Plaintiffs' dismissed procedural and substantive due process claims. Because there is no cause of action for civil conspiracy without an underlying unlawful action, *see Bradley v. Miller*, 96 F. Supp. 3d 753, 767 (S.D. Ohio 2015) ("[a]n underlying unlawful act is required before a civil conspiracy claim can succeed."), Plaintiffs' state conspiracy claim fails.

### IV. CONCLUSION

Wherefore, for the reasons stated here:

1) The August 2, 2018 stay (Doc. 32) is hereby **LIFTED**;

2) The County Defendants' motion to dismiss (Doc. 12) is **GRANTED**;

3) Plaintiffs' motion to alter judgment (Doc. 33) is **DENIED** as moot.

The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** in this Court.

**IT IS SO ORDERED.**

Date: 11/15/18

*Timothy S. Black*
Timothy S. Black
United States District Judge