# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JOSEPH SIEFERT, et al.,            Case No. 1:17-cv-511

    Plaintiffs,

                                                                   Hopkins, J.

       vs.                                                 Bowman, M.J.

HAMITLON COUNTY
BOARD OF COMISSIONERS, et al.,

    Defendants.

## MEMORANDUM ORDER

This civil action came before the Court on March 2, 2023 for a conference, by phone, to address the parties' discovery disputes. Notably, on September 26, 2022, Plaintiffs' counsel took the deposition of Defendant Daniel Almeida, M.D. Dr. Almeida treated minor Seifert while she was hospitalized at Cincinnati Children's Hospital. During his deposition, Dr. Almeida was asked whether he would discharge a child against medical advice if a court ordered him to do so. Plaintiffs contend that Dr. Almeida avoided the question and counsel for Defendants instructed him not to answer. Plaintiffs' counsel asks the Court to order Dr. Almeida to sit for his deposition again and answer the question: "Would you follow a Court order to release a child?"

    I.      <u>The Deposition</u>

To fully appreciate the testimony, and for the benefit of any reviewing court, it is best to recite the relevant portion in its entirety, starting at page 261, line 9:

Q.    **And if the judge said, release the child, you would do it, right**?

A.    *If they say that the patient would go home with the parents, the patient, upon discharge, could go home with the parent, but this is not my call. My call is, if the patient is medically cleared from the suicidal standpoint to go with their family.*

Q.      All right. Well, let's just keep it real simple here. **If the judge or the magistrate said, I disagree with you, allow the child to be discharged, you would go ahead and follow what the judge said, right?**

        MR. BRITTINGHAM: Objection. Calls for speculation. Asks for a legal conclusion. Answer, if you can.

(page 262)

A.      *The judge would not – I wouldn't expect the judge to make that medical decision on my behalf.*

Q.      Okay. I'm not asking that. I'm not asking about -- I'm just saying, **you would follow the order of the judge, wouldn't you?**

        MR. BRITTINGHAM: Objection. Answer, if you can.

A*.     If I had still imminent safety concerns about the patient leaving this hospital, I would still exercise my medical decision and not have the patient discharged.*

Q.      Okay. So let's just put this here, a real stark clear point of view. **If the judge said, discharge the patient, and you didn't think it was safe to discharge the patient, you would refuse to follow the judge's order; isn't that what you're saying?**

        MR. BRITTINGHAM: Objection.

Q.      Isn't that true?

        MR. BRITTINGHAM: If you can answer the question, go ahead.

A.      *I'm not answering whether or not I would follow a judge's order. I'm just answering what my clinical recommendation is.*

Q.      Okay. But recommendation, I'm not asking about that. **But let's just say you're out here on the street and the police man says, don't cross the sidewalk, you would obey that order, wouldn't you?**

        MR. BRITTINGHAM: Objection.

Q.      Or would you? **You'd just say, forget you, I'm just going to cross? Would you follow the law or not?**

A.      *I think it's speculative. I can't say, like, what I would do if the judge would make a medical decision on my behalf. I can't answer to that question.*

2

Q.	So you would leave it wide open? **You would go ahead and disavow what the judge says, right?**

    MR. BRITTINGHAM: Objection. That's not what he said.

Q.	Isn't that correct?

A.	That's what you're saying.

Q.	Well, what about you? I'm asking about you.

A.	*I cannot answer that question (page 264) about what would I do if the judge does make a medical decision on my behalf. This is a situation that I can't speculate.*

Q.	Okay. Let's --

    MR. BRITTINGHAM: Asked and answered. The last time here, Ted.

    MR. WILLS: No.

    MR. BRITTINGHAM: Yeah, it is. The last time. He's given the answer to you the only way he knows to give it. You can ask him one more time what he would do in some speculative scenario if a judge did this when it didn't happen, but this is the last time he's going to answer the question.

    MR. WILLS: I'm not even going to --

Q.	I want to make clear what I'm asking you here. I'm not asking you about the judge giving a medical decision. Okay? Or a medical recommendation. That's you over here. You're the doctor. Okay. I'm talking about a force of law. **If you received an order from the judge to release the child, would you comply or not?**

    MR. BRITTINGHAM: Objection, (page 265) asked and answered. Answer it for the last time.

A.	*The order that you are referring to, it is a medical decision. That's why I can't speculate.*

    MR. BRITTINGHAM: He's not answering this question again.

Q.	**What is the speculation you are troubled by?**

A.	*When you say, if the judge tells you to discharge a patient, when you said that, that means the judge is making a medical decision.*

3

Q. All right. Now, I want to take that little thought and put it aside**. I'm not asking about a medical decision. Okay. So just put that aside. And let's say the judge orders you to do it.**

A. *I disagree that this is --*

MR. BRITTINGHAM: Don't answer it. We're done. We're done with that line of questions.

MR. WILLS: Okay. I want to certify it.

MR. BRITTINGHAM: Certify it. (page 266) You've asked it 15 times.

MR. WILLS: Can you read back the question.

 (Record read by Reporter.)

Q. All right. So you refuse to answer?

A. I already answered many times.

Q. You already answered? No, I asked you about putting aside the medical decision and I didn't ask that before.

MR. BRITTINGHAM: He's answered the question.

Q. No. **With the medical decision out of it, just the plain barebones order of a judge, without a medical decision, okay, just release the child, would you or would you not comply?**

MR. BRITTINGHAM: Don't answer the question.

MR. WILLS: So we'll take that to the judge.

Q. Now, let me ask you this. **Are there other circumstances in your life where you refuse to follow the law?**

A. *No.*

(page 267)

MR. BRITTINGHAM:· Objection.

Q. You would follow the law in all other circumstances? Let me ask you. You pay your taxes?

A. I pay my taxes.

Q. Okay. Do you cheat on your taxes?

4

A. No.

MR. BRITTINGHAM: Objection. This is harassing.

MR. WILLS: No.

MR. BRITTINGHAM: No. He's not going to answer this harassing line of questions. We're not going to do it. We're not going to do it. That has nothing to do with the issues in this case.

MR. WILLS: It has everything --

MR. BRITTINGHAM: Whether he pays his taxes, whether follows the law?

MR. WILLS: Yes.

MR. BRITTINGHAM: No, he's not going to answer these harassing questions. Certify them all.

MR. WILLS: All right.

Q. **My question to you is, are there (page 268) other examples in your life where you refuse to follow the law?**

MR. BRITTINGHAM: Objection. No, don't answer that question. He's already -- you're saying, other examples in his life, you're suggesting that you've given him one example where he refused to follow the law and he didn't. This is a totally harassing line of questioning. He's not going to answer that. You can explain to the judge how that is relevant to this case.

Q. Let me ask you this. **Are there circumstances where you refused to follow the law?**

THE WITNESS: Answer that?

MR. BRITTINGHAM: Yeah, answer it.

A. *I can't think of any specific circumstances where that would happen.*

Q. **So then you're saying to me that that's your general rule, you follow the law?**

A. *The assumption is that we all follow the law.*

Q. Okay. **Even when you disagree?**

A. *The assumption is that we follow (page 269) the law even when we disagree.*

5

Q. All right. **Even when it calls for a medical opinion, right?**

MR. BRITTINGHAM: No, don't answer that question.

Q. Isn't that right?

MR. BRITTINGHAM: Do not answer the question. We're done with that.

MR. WILLS: All right. That's fine.

Q. Well, let me ask you this. **Let's say the judge ordered the child be released and the parents came to get the child. At that point would you refuse to allow the parents to take the child?**

MR. BRITTINGHAM: Objection. Calls for speculation.

Q. What would you do?

A. *That's the same question -- that's the same answer that I already provided you. I don't know how I can explain myself differently.*

Q. All right. **Well, let's say that you were held under an injunction to force you to leave -- to release the child.**

(page 270)

MR. BRITTINGHAM: Objection. We're --

Q. **Would you comply with that injunction?**

A. I don't know what injunction means.

Q. **That means an order that says, Dr. Almeida, I hereby order you to release that child. If you got that in the mail, would you comply with that?**

MR. BRITTINGHAM: Objection, asked and answered. Do not answer it.

MR. WILLS: I'm talking about an injunction. I'm talking about an injunction. This is different.

MR. BRITTINGHAM: No, you're asking him to guess again and again about the same scenario and question. He's asked and answered it. I've told you he's not answering it anymore. It's harassing.

Q. Let me ask you this. **Would you go to jail rather than release the child?**

MR. BRITTINGHAM: Objection.

Q. **Would you?**

6

>> MR. BRITTINGHAM: Don't answer (page 271) that question. It's harassing.
>
> MR. WILLS: Okay. I want to certify all of these, okay? Can we go through them.

(Record read by Reporter.)

> Q. Okay. **You refuse to answer the jail question?**
>
> A. Is that a question?
>
> MR. BRITTINGHAM: We'll stand on our objection.

Almeida Depo., 261-271 (bold and italics added by the Court).

II. <u>Legal Authority</u>

Plaintiff correctly notes that according to the federal civil rules, there are only three circumstances in which an attorney can instruct a witness not to answer: (1) to protect a privilege; (2) to enforce a court ordered limitation; or (3) to present a motion to terminate or limit the deposition. Fed. R. Civ. P. 30 (c)(2). Citing *Ethicon Endo-Surgery v. U.S. Surgical,* 160 F.R.D. 98, 99 (S.D. Ohio), Plaintiffs contend that the objecting attorney's remedy "lies in applying to the court for a protective order or sanctions." *Id*. The objecting attorney "does not have the right to unilaterally decide such issues by instructing the witness not to answer." *Id.;* see also *Lipian v. Univ. of Mich.,* No. 18-13321, 453 F.Supp.3d 937, 2020 WL 1814081 (W.D. Mich. March 11, 2020) (attorney may instruct witness to not answer under only three circumstances based on 30(c)(2)). Indeed, instructing a witness not to answer questions during a deposition without asserting a privilege, or ceasing the deposition to obtain a protective order, has been held to be "indefensible" and at variance with the rules of discovery. *Hughes v. City of Louisville*, No. 3:02CV-60-S, 2005 U.S. Dist. LEXIS 52460, at *18 (W.D. Ky. Jan. 25, 2005) citing *Ralston Purina Company v. McFarland*, 550 F.2d 967, 973 (4th Cir. 1977) (citing Wright & Miller).

7

Though an instruction not to answer may be appropriate when the question posed is clearly argumentative or misleading (*In re Air Crash Disaster at Detroit Metro. Airport*, 130 F.R.D. 627, 629 (E.D. Mich. 1989), "asked and answered" is not a proper objection during a deposition. *Lipian v. Univ. of Mich.*, Civil Action No. 18-13321, 2020 U.S. Dist. LEXIS 41935, at *21 (E.D. Mich. Mar. 11, 2020) *citing First Tennessee Bank v. Fed. Deposit Ins. Corp.*, 108 F.R.D. 640, 641 (E.D. Tenn. 1985). See also *Athridge v. Aetna Casualty and Surety Company*, 184 F.R.D. 200, 208 (D.D.C. 1998) (directions to a witness not to answer based upon relevance, unclear question or "asked and answered" are specifically prohibited by Rule 30(d)(1) and such behavior contravenes the Federal Rules of Civil Procedure).

The *Lipian* Court found that "[c]ourts assess whether the inappropriate interjections and other improper obstruction actually impeded deposing counsel's questioning or the witness' testimony." *Id.* at *18-19 citing *Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*, 2013 U.S. Dist. LEXIS 176763, 2013 WL 6632678, at *15-19 (S.D. Ohio Dec. 17, 2013)); *Cullen v. Nissan North America, Inc.*, 2010 U.S. Dist. LEXIS 152545, 2010 WL 11579750, at *8. However, "[i]f the questioning attorney remains undeterred and perseveres in the questioning to elicit substantive responses from the deponent, courts have declined to continue the deposition." *Id*. "But when an attorney has frustrated a fair examination of the deponent, courts will order the deponent to sit for a new [deposition]." *Id*. citing *Fedex Corp. v. United States*, No. 08-2423 MA/P, 2011 U.S. Dist. LEXIS 59570, 2011 WL 2023297, at *11 (W.D. Tenn. Mar. 28, 2011).

III. Analysis

Plaintiff's counsel asks the Court to order Dr. Almeida to sit for his deposition again and answer the question: "Would you follow a Court order to release a child?"

As the above transcript shows, Defense counsel objected repeatedly to the line of questioning based mainly on the basis of asked and answered. It is undisputed that Defense counsel did not seek a protective order or ask to terminate the deposition.[1]

Despite the improper objections, by and large, Dr. Almeida answered Plaintiffs' counsel questions. *See id.* at 261:11-16; 262: 10-13; 263:12-15; 263:25-264:3; 265:3-5; 265:10-13. In response to the question at issue here, Dr. Almeida stated that he would not expect a judge to make that medical decision on his behalf. Id. at 262:1-3. As such, Dr. Almeida explained that he could not speculate about what he would do if a judge attempted to make the discharge decision on his behalf. *Id.* at 263:12-15. Still unsatisfied with Dr. Almeida's response, Plaintiffs' counsel continued to ask him different versions of the same question. *See id.* at 262:4-7:14-19, 263: 16-18, 264: 17-24. Ultimately, counsel for the CCHMC Defendants determined the line of questioning was repetitive and harassing and instructed Dr. Almeida not to answer the question again. *See id.* at 265:20-22.

Plaintiffs' counsel then certified the question "Now, I want to take that little thought and put it aside. I'm not asking about a medical decision. Okay. So just put that aside. And let's say the judge orders you to do it." Id. at 265: 14-18. Defense counsel objected and instructed Dr. Almeida not to answer. Later in the deposition, Plaintiffs' counsel then

---

[1] As noted above, Dr. Almeida sat for his deposition in September 2022, nearly 6 months ago. The Court can only speculate as to why the issue was not resolved during the deposition and is being revisited nearly six months later.

9

asked "With the medical decision out of it, just the plain barebones order of a judge, with a medical decision, okay, just release the child, would you or would you not comply?" Id. at 266:13-17.  Again, Dr. Almeida did not answer this question upon instruction from counsel.  These two questions are essentially what the Court is now being asked to order Dr. Almeida to answer: "Would you follow a Court order to release a child?"

As several courts have held, instructing a witness to not answer a question for reasons other than the three reasons specifically provided for in Fed. R. Civ. P. 30 (c)(2) is improper. *Ethicon Endo-Surgery v. U.S. Surgical,* 160 F.R.D. 98, 99 (S.D. Ohio); *Lipian v. Univ. of Mich.*, Civil Action No. 18-13321, 2020 U.S. Dist. LEXIS 41935, at *21 (E.D. Mich. Mar. 11, 2020) *citing First Tennessee Bank v. Fed. Deposit Ins. Corp.*, 108 F.R.D. 640, 641 (E.D. Tenn. 1985). See also *Athridge v. Aetna Casualty and Surety Company*, 184 F.R.D. 200, 208 (D.D.C. 1998). Thus, Defense counsel's instructions not to answer were improper. However, despite the objections and improper instructions, Dr. Almeida answered the question that Plaintiffs' counsel now wants the Court to order be answered.

> Q. … If the judge or the magistrate said, I disagree with you, allow the child to be discharged, you would go ahead and follow what the judge said, right?
>
> …
>
> Q. … you would follow the order of the judge, wouldn't you?
>
> A. If I had still imminent safety concerns about the patient leaving this hospital, I would still exercise my medical decision and not have the patient discharged.
>
> Almeida Depo. 261: 18-22, 262: 5-7 and 10-13.

Thus, the undersigned finds Plaintiffs' counsel's questioning and the testimony elicited was not actually impeded by the improper instructions not to answer, therefore,

the court declines to continue the deposition of Dr. Almeida. Plaintiffs' request is DENIED.[2]

**IT IS SO ORDERED.**

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[2] As detailed in the quoted deposition transcripts, additional questions were asked, not answered, and certified. However, counsel has not asked for those questions to be answered. See Almeida Depo. at page 267, 271.